Thank you Judge Graves, pardon me, and may it please the Court, I'm Evan Howes on behalf of Jeffrey Durand Kersee. Your Honors, the District Court found that Mr. Kersee committed three dismissed state crimes based entirely on the unconfronted, single, double, and in one instance triple testimonial hearsay statements contained in just five pieces of paper. Everyone agrees that these circumstances implicated Mr. Kersee's due process right to confront and cross-examine adverse witnesses at his final revocation hearing, and everyone agrees that Mr. Kersee's interest here was especially strong. The government nevertheless maintains that the paper testimony it submitted was all the process Mr. Kersee was due. I'm here to explain why that's wrong. When was the revocation hearing? Yes, Judge. When was it? The revocation hearing was at the beginning of August, I believe August 8th, seven days after. And he's remanded and you noticed an appeal immediately after the order because he's going to get released soon. Right. If your remedy is vacate, remand, get a re-hearing, you'll be out. Depending on the expediency of this Court's I know you moved to expedite but Right, and we very much appreciate the Court indulging that and hearing this case in such an expedited fashion. I'm obviously not going to tell you you need to rush out an opinion. If it's going to be in our favor, the faster the better. But yeah, we do still have an interest here, Judge Higginson, in vacating the revocation. Yeah, of course. Right? And so maybe the government decides to drop the case after it goes back if he's already served the six months, maybe not. But I mean, the client wants us to appeal and so here we are. And he vehemently disputes these allegations that were dismissed in the State Court. And so the thing about this case, the two things about this case that are very important is that it combines every trait that this Court's cases have emphasized as creating an overpowering confrontation interest in this qualified revocation context and that includes the most important trait of all, which is that the reliability You said qualified revocation process? What does that mean? The qualified confrontation right in the revocation context. I apologize if I missed Because everything's diminished, right? No F.R.E., preponderance standard only, not really confrontation clauses. It's a due process right, which gives you, puts us in this world of balancing. And you're just saying when you balance this out, there's either no good cause or even if there were an error, it's not harmless, basically? What I'm saying is that our interest was exceedingly strong. We have all the things that were in all of the cases where this Court has found that before. And that there's none of the traits that the Court has found to be good cause to override that powerful interest. Is it fair to say that the District Court, of course he referenced his own experience with battered women, remember? Of course. He said that. And then he says, it sort of looked to me like he said, I'll take your client's hearsay, her essentially recantation, but I'm also going to take theirs. And inside one of theirs is an assurance that there's a recorded confession. So he admits he bloodied her up. And that's enough. I'm sort of both sides, it's going to be a paper hearing, and I'm letting you get some hearsay, I'll let them get some hearsay, and there's a party opponent statement in there, someone had just given us the tape recording. Isn't that sort of what's happening is a level of informality? Yeah, I believe it was an unconstitutional  case. Judge Higginson, and I do, one, I would just as a factual matter dispute the idea that there was a full confession in this recorded telephone conversation that the officer describes in this complaint. Mr. Kersey doesn't even say he saw a bloody nose, he simply says according again to what the officer says he said. Why didn't anyone write there and then say let's just play the recording? That is going to be a question for the government, Judge Higginson. We don't have the recording. It wasn't produced to us. We don't have the video. We don't have the body camera. We have no idea if the officer who actually spoke to Ms. Marstetter, who is not the officer who wrote the complaint, actually spoke to her even within close proximity to the December 22 date of the alleged incidents. They rely heavily on our Alvere decision, I'm sure you're prepared to discuss that. I am prepared to discuss that, and I can do that right now. I would like to make a preliminary point up front. Go back to your outline, I asked too many questions. I appreciate that. So I think, and I think this is kind of helpful, this will be helpful to your questions. The best evidence that we should get the relief that we're asking for here, I think, is that what the government is asking is something that this Court has never done, and I mean never. It's, it has never found good cause in a case where testimonial hearsay is the only evidence supporting the violation conduct, and no witness appeared to present that hearsay at all. In every single other case, in fact, in all four of the main cases we cite, Farish, McBride, Jimison, Justice, an officer or a even the officer and a probation officer showed up at the hearing and talked about what other people told them. So at least there was an opportunity to confront those officers, and still, this Court held . . . Why would that even really help you? Because the officers are really just repeating what somebody else said. There's nothing to cross-examine in that setting. I, I, I, well there, there are things we could cross-examine if, if we're limited to that. What would you have done here with the officer? What we would have done was we would have asked the officer, did you notice that she was intoxicated, because she said she's intoxicated. They had first-hand observations of, of her saying . . . They do not, Judge Higginson. That's an important point to make in the record. Judge Crane, Chief Judge Crane, excuse me, believed that to be the case, but in fact, if you read these complaints, there is not an actual assertion that the bloody nose is visible on the body camera, right? And so, like, there's not, there's not that assertion at all. It's, it's simply an assertion that . . . It fails under every case of ours. In their brief, page 22, they say, but it works under other circuit law. Would, do you know those other circuit cases they cite well enough to say . . . I do. . . . it was a police officer or corroborating evidence? In fact, in, in Sims, which is the Eighth Circuit case, and Carthen, which is the Second made very clear that, one, there was evidence of the fear, of the fear of reprisal, so that was the good cause. We don't dispute that if a, if there's actual evidence that a person is not, the reason a person isn't testifying is they're afraid of retaliation from the defendant, then that can rise to the level of good cause. But it's important to note that in Sims, Eighth Circuit, Carthen, Second Circuit, and even Alvear, which is our circuit, there was other independent corroborating evidence. In the, in the two outer circuit cases, there was independent evidence of the violation conduct. In Alvear, it's a little bit less. There was at least independent evidence corroborating the victim's hearsay statements that came in. That's not present here. And so, at the very least, we're outside of that. But again, remember, our interest here, at this point, at this juncture, and you mentioned the, that our own hearsay affidavit earlier, Judge Higginson, we responded with that because we were in a hearing where we were about to be put in jail based on paper. And so we came with our own paper, but we don't have to put, we, we have no burden to put on rebuttal evidence. It's not like sentencing where the PSR is magic and the things inside of it are true unless we put on rebuttal evidence. It's revocation. Our liberty is on the line. And so there is this default principle that confrontation is appropriate, but the government can overcome that appropriateness if it shows reasons why. And here, the reasons why, we're not even close to good cause. In fact, we, it's our position that you should go based on what the government actually asserted in the trial court. Remember, this is not a case where we made a weak objection or a small objection. I could have written my trial counsel's objection as my argument in the brief and added citations. It was thorough and it was advanced and it told the district court exactly what evidence we, we didn't like and told the district court the reason was because we aren't having the opportunity to cross-examine these officers, but also, more importantly, Judge Ho, we're not having the opportunity to cross-examine the other declarants. And so, you're right. If the, if the officers get up there and testify, I don't see how they can justify revocation because none of them witnessed any of the incidents that actually happened. Even if the one officer got up and it turns out that he saw a bloody nose or bruises whenever he spoke with the woman, that doesn't admit the hearsay describing her allegations. At that point, she would need to be called. And the government could, at this point, it could say that she's a hostile witness. It could make a prior statement. I don't want to speculate about what might happen at a revocation hearing where the confrontation right was actually afforded because I don't know, excuse me, I don't know what evidence the government has. I don't know what witnesses they would bring. I don't know what those witnesses would say. And that's why it's important that this is a procedural right. Even the, the main confrontation right that's at issue in Crawford and all those cases is a procedural right. And then this of course is a procedural right because it's a due process. And so what we're complaining about here and what this court recognizes important in Jemison is that the process was not correct. And so that's what needs to be altered. And that the, the normal remedy in a situation like this where there's no good cause found, in our view there is no good cause, that's what we're asking this court to find, is that you remand for a, for confrontation and the evidence to be excluded unless the declarants are presented for their testimony to be subject to cross-examination. That is the right that's at issue. And I do, I, I would be. You've got the Alvear stated government interests, page 190 about the witness being afraid, which is, seems to fit this case pretty well, doesn't it? I, well, in, in Alvear there was. Alvear, I'm sorry if I mispronounced. You know what case it is. I honestly don't know the pronunciation, I'm guessing. In that case, the, there was substantial evidence in this court's words of the, of the fear. But, but I, I made this point in the reply brief and I, and I wish I had made it stronger. But the, the difference in this case and that case is that in our case, the government herself, the, the prosecutor below said we anticipate that this witness will come and say the exact same things, which were exculpatory, that she said in the affidavit that we produced. And so. Right, there's no question she's changed her testimony multiple times, right? She alleges battery, she recants. She alleges battery, she recants. Why isn't that itself evidence of fear? The woman appears to be battered. Well, Judge Ho, it's, it's not evidence of fear because she's sworn in two separate documents that are consistent. One that was created before the revocation proceedings even started, and that's related only to the criminal mischief charge, that he didn't do this conduct, right? And so I think we, look, if there was outside evidence that the, I think what the government is getting at is the prosecutor, the only thing that was actually expressed on the record below is that the prosecutor just didn't believe the witness now. Fair enough. And, but that's not evidence of. Or felt they couldn't proceed with a non-cooperating witness. Well, I. This is the difficulty in domestic violence cases. No doubt. That is true, Judge Ho, but what we expect in cases is for there to be documentation of the fear. And here, we certainly, there's no basis to suggest that she would be afraid to testify favorably to our client, which is what, exactly what the prosecutor anticipated she would testify, that she would testify favorably in how they are in Sims. In other words, this prosecutor didn't say, I think she's fearful. The prosecutor said, I think she's a liar. I don't think she's going to tell the truth. Exactly, and that's bad. And in terms of your, your, your request for a remand, you're not asking us to, to remand and foreclose the possibility of a good cause showing, or are you? Are you saying remand and say, you've got to call some witnesses, or remand and say either good cause or call the witnesses? Our first order of position is that you should remand and say there was not good cause here, right? And so, I mean, in a, in a normal situations for a remand, it's always the case that if new evidence comes, comes along or intervening circumstances, the government might be able to show. Like, let's say one of these witnesses dies tomorrow. They could come forward and say, well, they're no longer available, right? And that would be the basis for good cause. But, I mean, there was no good cause before for a reason. It's the government just didn't believe this witness. It's not that they had any evidence that she was lying. We had our, our mitigation specialist get up and testify that she talked to this witness and that she affirmed that she believes what she said in these, in these affidavits. And I'm not trying to minimize the concerns for domestic violence that are real and that are out there. But there's just not evidence of it in this case. And the cause that has . . . I thought there were two other witnesses. Excuse me, Judge? I thought there were two other witnesses. I mean, again, it may be hearsay within hearsay. There's more . . . It wasn't just a credibility call on her. Whether the statement she made to the police are correct or the recantation statements are correct. I thought there were two witnesses. I thought there were two witnesses that would speak to . . . There's . . . I don't want to talk . . . No, no, no. I'm sorry. There is one witness who, who was purportedly there for the criminal mischief. There's no other witness for the robbery and assault. And the robbery, again, is the only mandatory one. The mother said she saw a bloody nose afterwards at some time after, but it wasn't there during the event. But either way, we have an interest in cross-examining each of those declarants because . . . Yeah. The truth of what they say depends on their credibility. I was thinking more following up on Judge Gray's question, you'd want to cross-examine them. You're not saying they're foreclosed from appearing. Oh, no. We want . . . bring them on and we'll do the litigation. May it please the Court.         Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.  Thank you. The district court in this case did not err by admitting the challenged hearsay testimony because there was good cause. If this Court finds that some of the hearsay testimony was improperly admitted, that error is harmless because the properly-admitted hearsay testimony of Ms. Marsteller was sufficient to establish by our preponderance of the evidence, all three violations. The standard of review for a properly preserved claim of confrontation through due process at a revocation hearing is the NOVO subject to the harmless error. Do you have any Fifth Circuit case which upheld a revocation determination based on police reports alone? No, not police reports only, Your Honor, but it is important to notice that these are not police reports only. These are sworn criminal complaints. So there is a difference, and this Court has said that when statements are sworn This is a Fifth Circuit case where there was no live testimony, and yet we upheld it. No, Your Honor. We are admittedly one step removed from the precedent that we cite. You could have called any of the police officers, totally in your control. Absolutely, Your Honor. You could have played the alleged recording, totally in your control. It's not in the record, but much like Mr. Kersey's counsel, we do not currently have that recording, but it is available. But it is also important to note, Your Honor, that it would be available to you, the government. It's also available to Mr. Kersey, Your Honor. If he thought there was something helpful, and this Court's precedents in Alvear and Elizondo state that. But Alvear, which may be the closest, there was still the testimony of the mother. There was the testimony of the police officer. And if I'm not mistaken, the battered woman was incriminating him. So fear would make sense. Actually, Your Honor, there was testimony from Mr. Alvear's mother. There was testimony from the police officer. And then there was recantation in Alvear as well. Right. So that's a similar factor between these two cases. Well, but the Court heard testimony from the probation officer, a Dallas police officer, and Alvear's mother. Yes, Your Honor. Alvear's mother, who was a defense witness. So then they excused the woman because she could be fearful. Yes, Your Honor. They found fear in that case. And importantly, they also found that fear could be implicit or inferred. And there is fear in this case. If you look at the record in this case, there are two different police calls where she is calling the police because she's fearful she's being threatened or assaulted with aggravated robbery with a deadly weapon by Mr. Kersey, an assault family member. So we have the April incident where there is a corroborating witness, Ms. Jaleesa Mathis. It's early in the morning, 6 o'clock. The two women are in the home. Mr. Kersey is aggravated that Ms. Marsteller is not answering his calls. He shows up, tries to gain entry to the house. They hear him. He is threatening her, saying he's going to get her, he's going to kill her. And they hear— Judge Green, these facts you're describing were before Judge Green. Yes, Your Honor. Through what hearsay declarant?  Yes, Your Honor. Yes, Your Honor. where there was actually law enforcement engaged with the defendant. So there could be a concern over bias, or there are actual observations and perceptions where they could be questioned on what they saw. At least, is that hearsay within hearsay? Is there anything in the record here to show that the judge made a good cause determination? It's very limited, and that's part of the reason we briefed that there may not be a showing of good cause. And so in that case, you go to harmless error, and you see if it's in the record. You see if there is good cause. It's established in the record, and whether it's inferred or implied in the court's rulings. And we do believe that it is. The court stated specifically that it found the information reliable, consistent. The court did also offer a reason why the government wasn't putting the police officers forward on page 126 and 127 of the record. The court said, well, you could offer the officers, but really functionally, all they've done in this case is they've take the statement of Ms. Marsteller and just put it in a report, or it's on body camera. And critically, in Alvere, this court stated that if Mr. Alvere had wanted to present or thought that evidence would help him, or witnesses would help him, he could have subpoenaed. And the court found that the subpoena cuts the other way in this district. If the supervisee wants to present witnesses and thinks that they have something beneficial for him, then it cuts against him that he doesn't offer them. It shows that he did not think there was something beneficial to offer through Investigator Walker's description of a recorded body cam memory. All Investigator Walker did as far as the body cam video did was describe what he saw on it and then swear under oath that that's what he saw. Now, if Mr. Kersey wanted to dispute what was on the body cam video, including a bloody nose, then he could have sought the body camera and admitted it, or he could have subpoenaed. But it's your burden. It is our burden, but our burden is a preponderance of the evidence burden. And we, and the government feels that through the sworn criminal complaints, we've met the preponderance of the evidence burden. And the court, much like in Elizondo and Alvere, had both statements from the recanting witnesses in this case and the other case. And in those cases, this court stated that the district court had the ability to weigh those two statements against each other. So we don't see it as the classic confrontation challenge that Mr. Kersey cites from Jimmison and Justice and McBride. It's not a he-should-see-said, partially because, as Your Honor pointed out, there is that partial confession that the district court noted on page 124. And if Mr. Kersey wanted to dispute what was in the recorded audio, he could have done the easiest thing, which is either testify that that is not what he said, or he could have obtained the recorded audio and said, your perception of what I said on the phone is completely wrong. But what he said on the phone corroborated Ms. Marsteller's statement about what happened on December 23rd in that aggravated robbery with a deadly weapon and assault family member. What he said was, I remember the incident. I was there. So that . . . I don't know that the way you're suggesting that we would write this would be, government doesn't need to call witnesses to put people in jail at all. They just have to call . . . they don't even call police. They just have to offer police reports that say that the victim said the opposite of what she's saying she said. And that's going to be enough. No, Your Honor. That is not enough. Just a police report is not enough. Well, it's law enforcement statements primarily relying on the woman that the district court implicitly is saying is fearful. And yet the only thing we have from her, other than law enforcement characterization of her, is that she didn't . . . she isn't fearful. In fact, she wants to exculpate him. Your Honor, I mean, we do have to keep in mind this is a domestic violence case. And in Elizondo, the court found that those recanting statements are itself an indicator of fear because that's typical in a lot of domestic violence cases. She says he did it, and she's too scared to come up, so that's proof. She says he didn't do it. Well, government still wins because the government says she's scared. I understand, Your Honor, but . . . But in this case, did the government even argue that that was the reason she wasn't testifying, that she was fearful? In the court below, did the government even make that argument? The government did not directly make that argument, except through the fact that it noted that she had refused to cooperate in the state court cases and admitted the dismissal sheets, which showed that she had requested non-prosecution and that had been a missing witness in all those cases. Now, it also . . . I would like to answer. My question is fearful didn't come up in the court below. Fearful came up through the court. The court recognized the issue of fear, as Judge Higginson pointed out, through its prior experience working pro bono in women's violence shelters. And it has—and this court has recognized through Elizondo that those recantations are themselves an indicator of fear and can be considered that. I'm very respectful of his experience and deeply concerned about any predicament like this one, but I'm just in somewhat disbelief, you can hear it, that the government wouldn't have any witness lined up. They had police officers they could have brought, even one. They could have brought the alleged recording. They had the other witnesses, the mother, et cetera, but the government did nothing. So I am not disbelieving the district courts and this woman's peril. I am just incredulous that the government would show up at a revocation hearing and have no live witness. Yes, Your Honor, and I can understand that. That would certainly have made my job easier, would have made this more straightforward to admit the audio or to admit—and to admit the video or to have a witness. But again, this court has said that— And what's the limiting principle? Let's say you win and you're writing our decision. We say police can offer—law enforcement can just offer its own reports and that's enough for a district court to put someone in jail. Your Honor, I think the limiting principle is one of the things this court gives great weight to and as far as the government's interest, and that is the reliability of the hearsay that's coming in. And in this case, the reliability is corroborated. First of all, it's one step from moved observation of body camera. And although the cases are not our brief, I know, Your Honor, was on a case called Wright and Judge Ho, you were on a case called Trammell where body camera was admitted. And that would certainly make it easy. It makes it very clear. But all that criminal or aggravated robbery with a deadly weapon, an assault family member, sworn criminal complaint describes as the officer watching body cam. Now, this court has said it does not necessarily see the utility of calling witnesses when there's nothing to be gained from that. And it's hard to see in the district courts referred to it on page 126 and 127 of the record. You could call the officers, but all they're going to say is I watched the video. That's what it said to me. I audio recorded him, and this is basically what he told me, which is I pushed her until several times. Yes, she could have gotten a bloody nose from me pushing her. Yes, I took all of her property, and I was going to hold it just as a way of leverage to force her to talk to me and do what I wanted her to do. So he did corroborate certain aspects of the event that happened on December 23rd, including admitting that he pushed her, didn't punch her, but pushed her, and it could have caused a bloody nose, and admitting he took her property. Now, the other factor that weighs in the government's favor as far as our interests and as far as reliability goes, which this court knows is a key concern as far as the government's interest, is the detailed nature of the reports and what was in them. She talks specifically about where she was. She was wearing a plaid shirt. It was torn. There was a stop sign in the yard that he backed the car into. Then she was in the yard in the initial statement and drove the car towards him. She was in fear for her life. That's the statement she made initially, so that's another aspect of the fear that weighs in here. And then when he drove the car towards her, she was in fear for her life again and went into his house to seek shelter with his mother. If we take her out of the equation altogether because it's purely a credibility call, what's the most powerful supporting evidence? Not having anything to do with the victim. Nothing to do with the victim, Your Honor. It's the confession, right? It's the confession, but I have to be very honest here. If you take Ms. Marsteller's statements out of the equation, I think this court has probably no choice but to remand for a rehearing. Why wouldn't the defendant's own confession? I guess I'm thinking that's one officer. You just put him on the stand. You authenticate whatever there is. It's very odd. The paragraph he says, there's no transcript. Don't rely on this, but this is, I promise you, what he said. And we have a recording of it, right? Isn't that essentially what it says? He says this is not a transcript, but this is what I was told. I think part of the problem— This is what I was told, so he didn't actually listen to it. He recorded it. He did record it personally. He did the interview and recorded it, Your Honor. So he doesn't even need the recording. He can just get up. It's a statement of a party opponent. Yes, Your Honor. That's true. But as far as that goes, if Mr. Kersey wanted to challenge the accuracy of that recording, the easiest way to do it is to obtain the recording and seek to admit it if he thinks that will help him. He clearly did not think that would help him. He's thinking you've got nothing. He looks around, there are no witnesses. He's thinking, well, how's the government going to prove this? Well, I don't know how we could look at Alvere and Elizondo and think that there's nothing when those complaining witnesses and victims in those cases didn't testify. Now, I understand that there were live witnesses of the police officers, but basically it's the difference between a live police officer relating the testimony and the sworn statement of a police officer who watched the statements on a body cam, and it can be easily verified whether his depiction of what occurred on that body cam video is accurate or whether it's not. That's assuming it exists? That's assuming it can be authenticated? I'm not sure. I'm, you know, you say you have a statement of a party opponent. I'm very, I don't see any reason to think there is that recording. There's a statement by a cop that he's got one. I think it's, from the record, there's a recording. I don't think there's any dispute about whether there's a recording. It's sworn in the complaints. A police officer swore that there's body camera video. A police officer swore that there's a recording. There's no dispute of it. Mr. Kersey never said, I didn't make a statement. Mr. Kersey never made any sort of inference that he was never in contact with the police or disputed the accuracy of that recording. It just didn't happen. So if Mr. Kersey had something to say to call that into question, that's another factor that lowers his interest in confronting the witness. As this Court has said, if you don't . . . A probation officer could have been called, right? Potentially, Your Honor. It certainly has happened in the past. But that's, it is a factor, Your Honor, that cuts against Mr. Kersey. He didn't provide any sort of alternative theory about the recording. I have real problems with that argument. He didn't have to provide a thing. I understand that, Your Honor. He does not have to provide a thing. But when you're weighing the balance interest and you weigh his interest, it is one of the factors that the Court has said, if the supervisee does not propose an alternative theory, then that cuts against his weight in confrontation. Your best case is? Our best cases are Alvear and Elizondo, Your Honor. The government's position, Your Honor, is that the Court did not err in admitting the hearsay evidence with lack of confrontation because there was good cause. Thank you. Before you sit down, if we're not persuaded, then you would agree we'd want to get the decision out as fast as possible, and would it be the government's intent to redo the hearing and put witnesses on? It would be the government's intent to redo the hearing and admit the audio and video and, if necessary, put witnesses on. And he's served, what, three of the six months already? The sentencing was August 2nd, Your Honor, so he's scheduled to be released in late January, I believe. And, you know, as this Court, as Judge Ho and Trammell dealt with, there was a body cam video in there. It was not a close call. The body cam video was admitted, so certainly we would seek to do that. And Judge Higginson, in your right case, there was also a body camera admitted in that, so that would be essentially what the government would seek to do in the first order. Thank you, counsel. Rebuttal. Thank you. Just a couple of brief points on rebuttals, Your Honor. Mr. Howes, you agree that the burden of proof in a revocation hearing is just by preponderance of the evidence? Sure. And there's no case that says you have to have a live witness in order to meet the burden of proving your claim by preponderance of the evidence? Of course not. But there, I mean, Morrissey says that you have the right to have, to confront and cross-examine witnesses unless there's a good cause not to. And, of course, if there's a body camera that shows the actions happening and the incidents occurring, then it would be sufficient. But, like, I don't know what this body camera shows, but it's still hearsay depending on what's on it. And we would, at that point, if it's just the officer speaking to Ms. Marstetter and outside of being able to observe whether there's a bloody nose or something, if it's testimonial, then we have a right to object to that evidence's introduction too unless Marsteller is presented for us to cross-examine. Presumably, at that point, maybe we could call her. But, again, this is all speculating based on what could happen at a hearing where we actually observe due process. I did want to point out that the government concedes that there's no case of this court where there's not a single person who's come up to testify.  Now, someone came and read Lord Cobham's prior examination that nobody got to cross-examine, right? It's always the case that somebody comes, but I do want to be clear. We are not content with the officers alone, and neither are this court's cases. This court's cases, Farish, McBride, Jemison, Justice, all of them recognize that there wasn't good cause even though an officer got up and spoke. And in those cases, if you look closely at them, there's several where I think it's Jemison where the court is recognizing, and Justice as well, that the officers don't have personal knowledge of what happened. And so that's what's important. Well, they might. The one that apparently took a call, what's the context of this recording? Was it a phone call? In our case? Yeah. How did Kersey get in? How did he start responding to an officer's questions and get recorded? An officer called him on the telephone and then apparently recorded it, and he didn't know that. But, of course, we dispute that it's a confession. You can read the portion of our reply brief explaining why the things that he does admit. You've never had access to that? No. And I do want to address this idea that we can go and get the evidence. Judge Higginson, I am concerned in the way that you have at least hypothetically expressed it is their burden in order to prove a revocation. This isn't sentencing. And I do want to point out that McBride in 1997 rejected this very argument in almost exactly the same type of context that we have here. And this is from the court's opinion. We reject the state's contention that we should deny McBride habeas relief because he could have done more short of cross-examining to cast doubt on her version of it. I don't know this, but does Rule of 16 apply? Does Discovery Rules, if they have a statement of your client? I would have to look at Rule 32.1 a little bit more closely, Judge Higginson. But, I mean, generally the government is, I think they would give us this evidence. But they didn't feel like they had to because they wanted to rely on the paper. And that is the thing that Morrissey says they can't do unless there's good cause. Is six months the maximum the judge could give your client? No, the judge. And there is a rehearing, and very, very difficult evidence comes out as to battery. Is it possible he'd actually get more time? Yes. Getting close to the end. That's true. But, I mean, one, he would only have to, if the judge gave him a ten-month sentence, he'd only have to serve four more, not ten. But either way, that is the gamble that any client takes when they do this. And at that point, we could assess what the options are. I don't anticipate that being a serious problem here. Yeah, no, it's your call. Right. But he wants to appeal this. He is adamant that he didn't do these things or that he at least is adamant that he would be able to be given the basic fundamental fairness of being able to cross-examine these witnesses because each one of them testified and he had no recourse to employ the tool that our founders recognized is the best tool for assessing reliability, and that's cross-examination. You know, the idea that this is just inherently reliable evidence is just not true because it all depends, the reliability of the evidence depends on whether each person is a credible person, and that's what separates this case from lab reports and other situations where there has been good cause. Thank you, Your Honors. All right. Thank you, Counsel. That concludes.